IRVING SWARTZMAN, an Infant, etc., and NATHAN SWARTZMAN, Respondents, *v.* SOCOL REALTY COMPANY, Appellant.*

Supreme Court, Appellate Term, First Department, December 16, 1930.

*Jenkins, Dimmick & Finnegan* [*William B. Shelton* of counsel], for the appellant.

*Max J. Merbaum* [*Herman Scheckner* of counsel], for the respondents.

LEVY, J. The only question which merits discussion upon this appeal is whether the failure to have the gate closed or the chains stretched across the entranceway, *during the daytime*, constitutes a violation of the Code of Ordinances of the city of New York.

The first sentence of section 164 of article 14 of chapter 23 of the Code of Ordinances. which is entitled " Cellar steps; cellar doors," reads as follows: " Every entrance or flight of steps, now existing and projecting beyond the line of the street and descending into any cellar or basement story of any house or other building, where such entrance or flight of steps shall not be covered, shall be enclosed with a railing on each side, permanently put up, from 3 to $3\frac{1}{2}$ feet high, with a gate to open inwardly, or with 2 iron chains across the front of the entranceway, 1 near the top and 1 in the centre of the railing, to be closed during the night, unless there be a burning light over the steps, to prevent accidents."

A literal reading of this sentence might seem to indicate that the gate or chains need be closed only at night, and not even then if there be a burning light over the steps. If the gate or chains were not to be used during the day, and if a burning light would obviate the necessity of their use at night, what was the object of requiring a gate or chains to be provided for every uncovered entrance or flight of steps to a cellar or basement? It seems to us it would have been much simpler to say that the gate or chains are only necessary at night if there is no burning light over the steps.

Moreover, the purpose of the ordinance is undoubtedly to prevent accidents. Indeed, the very language of the section makes this fully obvious. Leaving the front side of the entrance uninclosed during the daytime (and even at night, though a light be burning) would unquestionably tend to produce the very accidents which the local statute seeks to obviate. That the framers of the ordinance realized this and did not intend to permit the entrance to uncovered cellar steps to remain uninclosed in front, either by *day* or by *night*, is evident from a reading of section 161 of article 14, which requires " every existing area that is open at the top " to be " enclosed with an iron railing in front, and on the sides where there is an opening used for the purposes of ingress and egress." Why an entrance to uncovered cellar steps, which is not inclosed in front, should be any less hazardous than the entrance

or opening to any other area, is difficult to comprehend. The very language of section 164 indicates that no differentiation in this respect between cellar steps and other areas was intended, for it provides that the entrance " shall be *enclosed* with a railing on each side * * * with a gate *to open inwardly*, or with 2 iron chains *across* the *front* of the entranceway." (Italics ours.) The gate or chains are to constitute part of the *inclosure*, signifying that they are to be shut. The gate is not to be open but is " *to open*," *i. e.*, when actually in use for ingress or egress. (Italics ours.) The iron chains are not to hang down but are to be " *across* the front." (Italics ours.)

The improbability that the framers of the ordinance intended to permit the entrance to remain open in front as a constant menace to the public, coupled with the indications of a contrary intent manifested in the statutes as heretofore pointed out, convince us that the words " to be closed during the night " were not meant to refer to the gate or chains but were designed to apply to the *opening* beyond the building line, and to require that *opening* to be closed during the night (unless there be a light burning over it) in addition to the other requirements. The presence of the side railings and gate or chains in front, *even though closed*, would not be sufficient protection *in themselves* at night, since in the darkness children or others might find their way underneath the side railing in ignorance of the fact that it inclosed an opening which might prove dangerous. A burning light would likely reveal the presence of the opening.

Here, the accident happened in the daytime and there was proof below that there were no chains or gate across the front of the entrance to the cellar stairs. The trial court was requested to charge the jury that the stairway complied with the ordinance, but declined to do so. It was further asked to charge " that the absence of chains across the front of the stairway in the daytime at the time the accident happened did not create a negligent condition under the Ordinance." This was also declined and appropriate exception noted in each instance.

In the light of the reasoning adopted, we are of the opinion that no error was committed by the trial court and that the judgment should be affirmed.

Judgment affirmed, with costs.

LYDON, J., concurs; CALLAHAN, J., dissents, with opinion.

CALLAHAN, J. (dissenting). The provision of the ordinance (Ordinances of the City of New York, art. 14, chap. 23, § 164) to the effect that chains need not be in place at night if a light

is burning, clearly indicates that the purpose of the statute is to protect pedestrians against falling down the steps in the darkness. The construction placed on the ordinance by the majority of the court would mean that the cellar entrance need not be guarded with chains at night if artificial light is supplied but would require it to be so guarded in the daytime when there was natural light. I cannot agree with such construction. The language of the section plainly indicates otherwise.

A comparison of section 164 with section 161 of article 14 is in no wise helpful as the physical differences between an areaway open at the top in which there are no steps and one in which steps exist are quite apparent.

The judgment should be reversed and a new trial ordered, with costs to appellant to abide the event.